IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Jamie Lee Jackson                                                                                  Plaintiff

v.                                    No. 4:15-CV–047-KGB-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                      Defendant

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Kristine G. Baker.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Baker may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Jamie Lee Jackson seeks judicial review of the denial of her application for social security disability benefits.[3] Jackson last worked as a part-time substitute school teacher.[4] She claims she has been disabled since when she stopped working in May 2012.[5] She based disability on anxiety and depression.[6]

**The Commissioner's decision**.  After considering the application, the ALJ identified morbid obesity, myalgias, interstitial cystitis, adjustment disorder with mixed anxiety and depression, and panic disorder without agoraphobia as severe impairments.[7] The ALJ determined Jackson can do unskilled light work.[8] Because a vocational expert identified available work,[9] the ALJ determined Jackson isn't disabled and denied the application.[10]

---

[3]SSA record at pp. 152 & 160 (applying on June 14, 2012 and alleging disability beginning Nov. 20, 2011).

[4]*Id*. at pp. 51, 167, 181 & 187.

[5]*Id*. at p. 45 (amending alleged onset date to May 1, 2012).

[6]*Id*. at p. 180.

[7]*Id*. at p. 24.

[8]*Id*. at p. 29.

[9]*Id*. at p. 71 (identifying hotel housekeeper and document preparer as available jobs).

[10]*Id*. at pp. 34-35.

Jackson sought review from the Appeals Council. She submitted new evidence, including a post-hearing medical statement from her urologist. The Appeals Council denied review, rejecting the urologist's statement as addressing a time after the decision.[11] With that action, the ALJ's decision became a final decision for judicial review.[12] Jackson filed this case to challenge the decision.[13]

In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14] This recommendation explains why substantial evidence supports the decision and why the ALJ made no reversible legal error.

**Jackson's allegations**. Jackson contends she cannot work. She challenges the identification of medically determinable impairments and the evaluation of her

---

[11]*Id*. at pp. 1-2.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

credibility. She contends the hypothetical question failed to incorporate all of her limitations. She says the Appeals Council erred in rejecting the urologist's opinion. For these reasons, she maintains substantial evidence does not support the decision.[15]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Jackson can do unskilled light work.[16] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[17] Unskilled work requires the ability to understand, retain, and carry out simple instructions, and make simple work-related decisions. The ALJ required work involving incidental interpersonal contact and simple, direct, concrete supervision. For the following reasons, a reasonable mind will accept the evidence as adequate to show Jackson can work within these parameters:

> 1. **Jackson's impairments can be controlled with treatment**. "An impairment which can be controlled by treatment or medication is not considered disabling."[18] Jackson has three primary impairments: interstitial cystitis, adjustment disorder, and panic disorder. The medical evidence shows these impairments can be controlled with treatment.

---

[15]Docket entry # 10.

[16]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[17]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[18]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

<u>Interstitial cystitis</u>. Six months after she stopped working, Jackson was diagnosed with interstitial cystitis[19] — a "chronic inflammatory condition of the bladder involving symptoms of bladder pain, frequent urination, and burning during urination."[20] There are many treatments for interstitial cystitis, but doctors prescribed diet change, weight loss, exercise, oral medication, and bladder instillation.[21] The latter treatment involves the placement of medication directly into the bladder. Although the effect of treatment isn't permanent,[22] Jackson's symptoms improved with treatment.[23]

<u>Adjustment disorder and panic disorder</u>. At first, Jackson based her claim on anxiety and depression.[24] Her symptoms flowed from her relationship with her teenage daughter and husband.[25] Doctors recommended anti-anxiety medication and individual therapy, but Jackson was reluctant to

---

[19]SSA record at p. 643.

[20]Monique Laberge, Rosalyn Carson-DeWitt & Brenda W. Lerner, Cystoscopy, 2 The Gale Encyclopedia of Medicine. 1268 (4th ed).

[21]SSA record at p. 727.

[22]*Id*. at p. 939 (June 18, 2014: reporting worsening symptoms).

[23]*Id*. at p. 904 (June 25, 2013: improved symptoms, but continues to have some urination frequency), p. 881 (Sept. 25, 2013: fair symptom control, stable with bladder instillations) & p. 871 (Nov. 14, 2013: Urogesic Blue is helping with bladder spasms).

[24]*Id*. at p. 180.

[25]*See e.g., id*. at pp. 308 (Nov. 23, 2011: stressed out over teenage daughter), p. 459 (June 4, 2012: increased stress due to problems with teenage daughter), p. 468 (July 24, 2012: significant stress, sent daughter away), p. 472 (June 28, 2012: problems with panic attacks started three months ago when daughter starting acting out), p. 675 (July 26, 2012: teenaged daughter lies and dates female against mother's religious beliefs), p. 678 (July 26, 2012: separated from husband last spring), p. 494 (Aug. 22, 2012: daughter started acting out two years ago, she tried to jump out of moving car, attacked younger sibling, and falsely reported physical abuse to DHS) & p. 672 (Aug. 22, 2012: separated from husband).

accept treatment recommendations.[26] When she accepted treatment recommendations, her symptoms improved.[27]

2. **The ALJ properly considered fibromyalgia**.  A few months after applying for disability benefits, Jackson sought,[28] and obtained, a diagnosis of fibromyalgia from a rheumatologist.  She then added fibromyalgia as a reason for disability and reported widespread pain throughout her body.[29]  She asked the rheumatologist to complete medical questionnaires about her ability to work.  The rheumatologist reported

---

[26]*Id*. at p. 432 (Nov. 12, 2011: doctor recommended Ativan for anxiety, but she refused it; doctor prescribed milder anti-anxiety medication), p. 291 (Mar. 26, 2012: referred to psychiatrist for anxiety and depression), p. 288 (Apr. 16, 2012: referred to mental health), p. 393 (Apr. 28, 2012: followup with mental health), p. 282 (May 1, 2012: medication prescribed for depression and anxiety), p. 277 (May 11, 2012: she doesn't want medication for panic attacks, she tried prescribed medication but didn't like it), p. 369 (May 14, 2012: see mental health provider), p. 271 (May 29, 2012: she hasn't yet contacted mental health provider), p. 472 (June 28, 2012: hasn't taken medication prescribed for panic attacks).

[27]*Id*. at p. 479 (Aug. 20, 2012: prescribed anti-depressant is making a large difference), p. 664 (Oct. 24, 2012: anti-depressant has helped greatly), p. 662 (Nov. 12, 2012: she used coping techniques to calm down after hearing disappointing news from daughter), p. 719 (Dec. 17, 2012: still has some anxiety episodes, but can identify and work through them), p. 712 (May 11, 2013: depression relatively controlled, but having some increased anxiety, ambivalent about adjusting medications), p. 877 (Aug. 22, 2013: doing relatively well, low dose of Ativan has helped anxiety, significantly more good days than bad days), p. 876 (Aug. 26, 2013: no recent panic attacks, uses deep breathing and coping statements to prevent attacks, feels better since seeking mental health treatment), p. 872 (Oct. 21, 2013: feels better overall, still has panic attacks but less frequently) & p. 857 (Mar. 5, 2014: somewhat depressed since daughter returned, but managing her symptoms).

[28]*Id*. at p. 477 (July 13, 2012: stating that her family wants her tested for fibromyalgia).

[29]*Id*. at p. 224.  *See also id*. at p. 856 (telling her mental health provider that she sought disability benefits for anxiety and fibromyalgia).

6

disabling symptoms.[30]

When a claimant bases her claim, in whole or in part, on fibromyalgia, the rules instruct the ALJ to evaluate the claimant's symptoms to determine whether fibromyalgia is a medically determinable impairment.[31] The ALJ followed the rules and determined fibromyalgia was not a medically-determinable impairment. Jackson claims the determination constitutes reversible error. The problem with Jackson's argument is that even if the ALJ erred, Jackson can show no harm.[32]

Jackson can show no harm because the ALJ thoroughly analyzed the medical evidence and correctly concluded that the medical evidence establishes no disabling symptoms. Even fibromyalgia is a medically-determinable impairment, the ALJ would not have decided differently.

During her first visit with the rheumatologist, Jackson reported numerous symptoms.[33] During later visits, she complained mostly about left hip pain; she described her pain as tolerable.[34] These reports contradict the claim of disabling pain and undermine the rheumatologist's medical

---

[30]*Id*. at pp. 751 & 754.

[31]SSR 12-2p: Titles II and XVI: Evaluation of Fibromyalgia.

[32]*Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (To show harmful error, the claimant "must provide some indication that the ALJ would have decided differently if the error had not occurred.").

[33]SSA record at p. 649 (Oct. 5, 2012: reporting that initially she felt tingling in right shoulder and arm; then diffuse tingling from mouth to feet; then intermittent tingling in arms, legs, hands and feet; occasional aches in right hand for two weeks; left hip pain for past four to five months when walking; increased sensitivity to touch since 2009) & p. 651 (diffuse spinal tenderness, positive tenderness in hands and wrists)

[34]*Id*. at p. 686 (Nov. 7, 2012), p. 683 (Jan. 8, 2013), p. 732 (May 7, 2013) & p. 849 (Oct. 7, 2013) & p. 846 (Apr. 7, 2014).

questionnaires.[35]

Jackson didn't always take prescribed medication.[36]  A reasonable mind would except a person with disabling pain to take prescribed medication.  To the extent Jackson has fibromyalgia-like symptoms, the ALJ incorporated those symptoms by including myalgias as a severe impairment.[37]

3.  **The record as a whole shows no disabling symptoms**.  In reviewing a decision denying an application for disability benefits, the court must determine whether the decision is supported by substantial evidence in the record as a whole.[38]  Reviewing for "substantial evidence on the record as a whole" requires a scrutinizing analysis.[39]  The court must consider all of the evidence — including evidence detracting from the ALJ's decision.[40]  "[T]he court must … take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."[41]

The contradictory evidence in this case consists of allegations and

---

[35]*Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011) ("ALJ may discount or even disregard the opinion of a treating physician…where a treating physician renders inconsistent opinions that undermine the credibility of such opinions").

[36]SSA record at p. 719 (Dec. 17, 2012: she's reluctant to take medication prescribed on Nov. 7, 2012), p. 712 (Mar. 11, 2013: seeing rheumatologist for fibromyalgia but taking no medication) & p. 848 (Apr. 7, 2014: not taking medication prescribed for fibromyalgia).

[37]In actuality, myalgia — or muscle pain — is not an impairment; instead, it is a symptom.  The mis-characterization has no bearing on the result in this case.

[38]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[39]*Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

[40]*Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

[41]*Gavin*, 811 F.2d at 1199.

8

complaints. That evidence implicates Jackson's credibility. The ALJ discounted Jackson's credibility. Jackson challenges the evaluation of her credibility, so the court must determine whether the ALJ had a sufficient basis for discounting credibility.

"Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."[42] The record contains sufficient inconsistencies to support the credibility evaluation. For example, Jackson testified that she stopped working as a substitute teacher because she needed frequent bathroom breaks,[43] but she told the psychological examiner that she was let go because her teenage daughter falsely reported physical abuse.[44] She reported worsening panic attacks,[45] but 13 months later, she denied having a real severe panic attack for almost two years.[46]

She claimed pain prevents her from working, but she doesn't want to take prescribed pain medication because she wants to function as a mom.[47] The lack of income suggests other motivation for seeking disability benefits.[48] The balance of allegations and complaints against objective medical findings supports the ALJ's credibility evaluation. The objective medical evidence shows no disabling symptoms.

4. **Substantial evidence supports the decision, including new evidence**. When the Appeals Council considers new evidence, but denies review, the court must determine whether the decision is "supported by substantial

---

[42]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[43]SSA record at p. 52.

[44]*Id*. at pp. 494 & 497.

[45]*Id*. at p. 231.

[46]*Id*. at p. 856.

[47]*Id*. at p. 69.

[48]*Id*. at p. 856 (patient has no income, she lives next door to her mother with her children and mother helps her with finances).

evidence on the record as a whole, including the new evidence."[49] Out of necessity, this task requires the court to "speculate to some extent" about how the ALJ would have weighed the new evidence had it been submitted for the hearing.[50]

The new evidence documented a flare-up of interstitial cystitis.[51] The flare-up has little probative value because treatment doesn't provide permanent results. Jackson also submitted a medical statement from her urologist, reporting disabling symptoms and limitations.[52] According to the urologist, "the earliest date that the description of symptoms and limitations" applied was May 22, 2013.[53] Because that date falls within the period for which benefits were denied, Jackson says the Appeals Council committed reversible error by rejecting the statement.

The ALJ's discussion of the medical evidence and legal findings indicate how the ALJ would have weighed the statement had it been submitted for the hearing: the ALJ would have rejected the reported limitations as unsupported. According to the urologist, Jackson can sit for a total of two hours in eight-hour workday,[54] but Jackson testified that she sits at home all day watching television.[55] The testimony implicates more than two hours of sitting. The urologist reported that Jackson can walk for only two hours a day,[56] but Jackson testified that she does "normal house things,"

---

[49]*Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

[50]*Riley v. Shalala*, 18 F.3d 619, 622-23 (8th Cir. 1994).

[51]SSA record at pp. 929-43.

[52]*Id*. at p. 16.

[53]*Id*. at p. 18.

[54]*Id*. at p. 17.

[55]*Id*. at pp. 53-54.

[56]*Id*. at p. 17.

like meal preparation, cleaning, mopping, dish washing, and sweeping.[57] The testimony implicates more than two hours of walking in an eight-hour day. Treatment notes do not document the reported limitations.

Importantly, the urologist prepared the statement several months after a bladder instillation. At that time, Jackson experienced a flare-up. Even if the reported symptoms existed at that the time of the statement, treatment notes show symptoms improve with treatment. Considering the record as a whole, including the new evidence, a reasonable mind will accept the evidence as adequate to show Jackson can do light work. Nothing shows she cannot occasionally lift 20 pounds or frequently lift/carry 10 pounds.

5. **Vocational evidence supports the decision**. The ALJ used a hypothetical question to ask a vocational expert about the availability of unskilled light work. The ALJ required unskilled work due to mental impairment. Jackson claims the ALJ should have required more mental limitation, but mental symptoms aren't why she stopped working. The medical evidence supports no more limitation.

According to the psychological examiner, Jackson can persist and complete work in an acceptable time frame, so long as she doesn't have a panic attack.[58] At the time of the exam, Jackson thought she could return to work if she obtained counseling.[59] This evidence is probative of the claim because Jackson had received no mental health treatment. After she received treatment, her symptoms improved. Logically, her mental capacity to work improved as well. Jackson may have had residual symptoms, but limiting her to unskilled work, and requiring incidental interpersonal contact, accommodated her symptoms.

Jackson contends the hypothetical question omitted numerous physical limitations — additional reduction in lifting, carrying, sitting, standing, and walking; limitations in reaching, handling, and fingering; and

---

[57]*Id*. at pp. 54-55.

[58]*Id*. at p. 497.

[59]*Id*.

frequent unscheduled bathroom breaks — such that she is unable to do even sedentary work. These limitations are important to the claim because the vocational expert identified available light and sedentary work. A person capable of light work can do sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."[60] Jackson reported no problems with fine dexterity or sitting in her agency pleadings.[61] No objective medical evidence documents problems with fine dexterity or sitting.

The hypothetical question was proper because it captured the concrete consequences of Jackson's deficiencies.[62] When asked about work for a person with those consequences, the vocational expert identified housekeeping as available light work and document preparer as available sedentary work.[63] The availability of work shows work exists that Jackson can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[64] Because such work exists, Jackson is not disabled under social security law.

### Conclusion and Recommended Disposition

A reasonable mind will accept the evidence as adequate to support the decision because medical evidence shows no disabling mental or physical limitation and becasue vocational evidence shows work exists that Jackson can do. Because the evidence shows nothing preventing unskilled light work, substantial evidence supports the

---

[60]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[61]SSA record at pp. 217, 224 & 231.

[62]*Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) ("The hypothetical question must capture the concrete consequences of the claimant's deficiencies.").

[63]SSA record at p. 71.

[64]42 U.S.C. § 1382c(a)(3)(B).

decision.  The ALJ made no reversible legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Jackson's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

    Dated this 15th day of September, 2015.

                                                _____

                                                United States Magistrate Judge